**The STATE of Ohio, Appellee,**

v.

**HURT, Appellant.**

[Cite as *State v. Hurt,* 158 Ohio App.3d 671, 2004-Ohio-4266.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20155.

Decided Aug. 13, 2004.

672

Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

J. Allen Wilmes, for appellant.

BROGAN, Judge.

{¶ 1} Zachary B. Hurt was found guilty by a jury in the Montgomery County Court of Common Pleas of unlawful sexual conduct with a minor, a felony of the third degree. The trial court sentenced him to community-control sanctions and ordered the forfeiture of his computer to the Riverside Police Department.

{¶ 2} The state's evidence established the following facts.

{¶ 3} Hurt, a 43–year–old gay male, and Stephen Howell, a 19–year–old gay male, met over the Internet in late September 2002. After talking several times on the telephone, they first met in person on September 22, 2002. On Friday, September 27, 2002, Hurt and Howell again met. Howell stayed at Hurt's apartment on Friday night and spent Saturday with him. On that Saturday, Howell informed Hurt that he was not interested in a romantic relationship with him. Despite that conversation, Howell spent Saturday night with Hurt, as well. On Sunday morning, while Hurt was taking a shower, Howell used Hurt's computer and logged onto the Internet as hotass69_1983. While online, Howell communicated with N.F., a 15–year–old gay male, and they arranged to meet that day as friends. According to Howell, he informed Hurt that he was going to see a 15–year–old friend in Greenville. Hurt responded, "Are you sure he's not an undercover cop?"

{¶ 4} During the early afternoon, Howell picked up N.F. at his home, and they drove to the Dayton Mall. After window-shopping and eating dinner, Howell received a telephone call from Hurt. Hurt indicated that Howell had left some clothes at his apartment, and he invited them to visit, watch a movie, and go to the music store. With N.F.'s agreement, Howell and N.F. went to Hurt's residence. When they arrived, Howell and N.F. sat down on Hurt's couch to watch the end of *Grease,* which was airing on the television. Hurt brought Howell's clothes to the living room. After *Grease* had ended, Hurt invited the two into his bedroom, where his computer was located, to search online for ring

tones for Howell's cellular telephone. Howell sat in the computer chair, Hurt milled around the room, and N.F. sat on the bed. After searching unsuccessfully, Hurt put an all-male pornographic video, entitled *Mine's Bigger Than Yours*, into his VCR and began to play it. Howell moved onto the bed beside N.F., and Hurt sat on a chair in front of the bedroom door.

{¶ 5} N.F. was aroused by the video, and he asked Hurt if he could go to the bathroom. Hurt and Howell understood that N.F. wanted to masturbate. Hurt responded, "Why don't you stay here; we're all friends." N.F. pulled down his pants to his thigh and began to masturbate on the bed. Hurt touched N.F.'s inner thigh and penis and stroked N.F.'s penis. Hurt then instructed Howell to perform oral sex on N.F., which he did for several seconds. In addition, Hurt performed oral sex on N.F. and then kissed him. After the oral sex had ceased, N.F. masturbated until he ejaculated. Hurt provided him with towels, and N.F. cleaned up. Howell and N.F. left Hurt's apartment shortly thereafter. Howell and N.F. subsequently reported the incident to the Riverside police.

{¶ 6} Hurt asserts four assignments of error on appeal. Because we conclude that the third assignment of error is dispositive, we address that assignment only.

{¶ 7} "3. The trial court's continuous pattern of permitting the prosecutor to introduce evidence more prejudicial than probative served to deny appellant due process."

{¶ 8} In his third assignment of error, Hurt asserts that the trial court erred in admitting evidence of Hurt's failure to report his roommate's income and workers' compensation income to his subsidized rental authority, of the pictures of male genitalia on his computer, of N.F.'s reaction to the incident, and of Hurt's sexual activity with Howell.

{¶ 9} Evid.R. 403(A) provides, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." "Resolution of the question of whether the probative value of evidence is *substantially* outweighed by the danger of *unfair* prejudice, confusion of the issues, or of misleading the jury is necessarily commended to the discretion of the trial court." (Emphasis sic.) *State v. Petty* (June 4, 1992), Montgomery App. No. 13002, 1992 WL 120503; *State v. Rogers*, Miami App. No. 2003–CA–30, 2004-Ohio-2746, 2004 WL 1178764.

{¶ 10} First, Hurt argues that "the allusion and innuendo that Hurt may be exaggerating his workers' compensation disability and may be failing to report income or roommates for his subsidized rent" were inadmissible, because they were offered solely to demonstrate that he was dishonest, in violation of Evid.R. 404(B) and R.C. 2945.59. Hurt states that evidence of other acts is limited to

those that are closely related in time, nature, and place to the offense charged. The state responds that "Evid.R. 608(B) allows a party to question a witness on cross-examination about specific instances of conduct for the purpose of attacking credibility."

{¶ 11} "The Ohio Rules of Evidence clearly delineate the methods by which a party may impeach a witness. Credibility may be attacked by evidence that the witness has been convicted of a crime (Evid.R.609), or by evidence of the witness's character for untruthfulness (Evid.R.608)." *State v. Rodriquez* (1986), 31 Ohio App.3d 174, 176, 31 OBR 339, 509 N.E.2d 952; *State v. Skatzes,* Montgomery App. No. 15848, 2003-Ohio-516, 2003 WL 490549. Under Evid.R. 608(B), a party may, in the court's discretion, cross-examine a victim regarding false statements if they are clearly probative of truthfulness or untruthfulness. See *State v. Fredrick,* Montgomery App. No. 18996, 2002-Ohio-1195, 2002 WL 360643; *State v. Boggs* (1992), 63 Ohio St.3d 418, 421, 588 N.E.2d 813. "Other than the Evid.R. 609 exception for certain criminal convictions, a witness's credibility may not be impeached by extrinsic proof of special instances of his conduct; such conduct may be inquired into only by the intrinsic means of cross-examination within the guidelines set forth in Evid.R. 608(B). Criminal activities not resulting in conviction cannot ordinarily form the basis for an attack upon a witness's credibility." (Citations omitted.) *Skatzes,* supra, at ¶ 183.

{¶ 12} In the present case, the state argues, and Hurt acknowledges, that the sole purpose of the evidence regarding his alleged exaggeration of his disability and his apparent failures to place his nephew on his lease and to report his nephew's income to his subsidized housing authority was to imply that he is dishonest. We agree with the state that this evidence is probative of Hurt's truthfulness, and thus the evidence is permitted, in the court's discretion, pursuant to Evid.R. 608(B). Accordingly, the trial court did not err in permitting the state to cross-examine Hurt as to this conduct.

{¶ 13} Next, Hurt claims that the trial court erred in overruling his objections to questions about photographs of penises on his computer and in allowing the prosecution "to show pictures of naked male genitals[,] including one of Howell[,] to the jury." Hurt notes that none of those photos included N.F. or any other minors, and there were no allegations that they had been shown to N.F. Thus, Hurt argues that the prejudicial effect of the pictures far outweighs their probative value.

{¶ 14} The state responds as follows: "The assistant prosecutor's questioning and use of the pictures was permissible under Evid.R. 613(C). That rule allows extrinsic evidence of conduct inconsistent with the testimony of a witness to be admitted when it is offered solely for impeachment, a proper foundation is laid,

and the evidence is of consequence to the determination of the case. Defendant's possession of images of men and male genitalia on his computer was inconsistent with his testimony at trial that he was not a sexual person. Defendant's assertion that he was not sexually active and not interested in sex went to the heart of the case, since it amounted to a denial that he had engaged in sexual conduct with N.F. The assistant prosecutor was entitled to use the images found on Defendant's computer to impeach his statements."

{¶ 15} We disagree. During Hurt's direct examination, he testified that he was not sexually active. In response to a question as to how long he had not been sexually active, Hurt responded, "Well, I've been seeing basically one person up until around Christmas of this year. He moved away but before that I was not sexually active for years." The prosecutor addressed this testimony in her cross-examination:

{¶ 16} "Q: And you are not denying that you had sex with males?"

{¶ 17} "A: No, I'm not denying that."

{¶ 18} "Q: And you said you had a boyfriend until Christmas?"

{¶ 19} "A: I had a friend that I was seeing, yes."

{¶ 20} "Q: Was that a boyfriend?"

{¶ 21} "A: That would be a male, a male friend."

{¶ 22} "Q: Sexual partner?"

{¶ 23} "A: I would say that, yes."

{¶ 24} "Q: And he moved at Christmas time?"

{¶ 25} "A: Yes, around Christmas time."

{¶ 26} "Q: How long was that relationship?"

{¶ 27} "A: It was approximately 6 months."

{¶ 28} "Q: Six months?"

{¶ 29} "A: Approximately, yes."

{¶ 30} "Q: So when Stephen was over sleeping in your bed two nights in a row you were in a serious relationship with a man?"

{¶ 31} "A: Not a serious one. It was a relationship."

{¶ 32} "Q: You said you haven't been sexually active since that person left at Christmas? So you were sexually active with him, correct?"

{¶ 33} "A: Yeah."

{¶ 34} "Q: Not serious, just sexually active?"

{¶ 35} "A: Right."

{¶ 36} "Q: You said that you are not interested in sex since he left, is that correct?"

{¶ 37} "A: Not really."

{¶ 38} Through the above questioning, the prosecutor made clear that Hurt was sexually active during the relevant time period, i.e., during September 2002.

{¶ 39} The prosecution continued, however, by asking, "Does that mean that on your computer you would not have anything sexual that you downloaded and saved?" The state then inquired of Hurt whether he had pictures of penises on his computer and asked about specific photographs of naked men and male genitalia that had been found on his computer.

{¶ 40} We see no reasonable basis for the prosecution to have proceeded along these lines. The photographs have no probative value as to whether Hurt engaged in sexual conduct with N.F. or any other person. Although at least one of the photographs was of Howell, Howell had testified that he had used Hurt's computer during his visits to Hurt's apartment. Moreover, these pictures had been taken during a time when Hurt had admitted that he had been sexually active; Hurt had testified that he was not sexually active prior to his six-month relationship and since that relationship ended in December 2002, not during September 2002. Moreover, Hurt has not been charged with any offense based on his use of his computer. In short, the pictures are not inconsistent with Hurt's testimony, and they have no relevance to the determination of this case regarding N.F. Accordingly, the pictures were not admissible under Evid.R. 613. Because the verdict was based primarily on the jury's assessment of the credibility of the witnesses and because the improper admission of the pictures could have negatively affected the jurors' determination of Hurt's credibility, we cannot find this error to have been harmless.

{¶ 41} Hurt further asserts that the trial court improperly admitted testimony "of how Hurt aggressed on young adult Howell 'unzipping his pants and performing oral sex,' the nature of (homosexual) kisses between Hurt and Howell, and the fact that [N.F.] cried later and 'was sobbing hysterically in the car.'" Hurt emphasizes that he was not charged with rape, nor did the charge involve force or coercion. He further argues that his sexual conduct with Howell was inadmissible to prove motive or intent.

{¶ 42} Beginning with N.F.'s crying, the trial court did not err in permitting that testimony. As noted by the state, N.F.'s demeanor upon leaving the apartment was relevant as to whether the sexual conduct had occurred and whether N.F. had initiated that conduct, as Hurt alleged. Likewise, we find no error in the admission of evidence of Howell and Hurt's kisses. That conduct does not constitute a "prior bad act," and the state was permitted to demonstrate

the relationship between Hurt and Howell in light of the fact that N.F. was introduced to Hurt due to that relationship.

{¶ 43} Turning to the sexual conduct between Howell and Hurt, Howell testified: "I was very tired from driving all day and I wanted to sleep. I was laying on my back and he [Hurt] was sitting next to me and was groping me, touching me, and ended up unzipping my pants and performing oral sex on me. I kept trying to roll over and trying to get away but I was tired and I let him go. I felt a loss of control[;] I just didn't do anything about it." At trial, Hurt did not object to this testimony.

{¶ 44} The state argues that the evidence of sexual activity between Howell and Hurt "was admissible to show Defendant's scheme, plan, or system in committing the offense of unlawful sexual conduct with a minor. Defendant accomplished his criminal acts by exploiting his relationship with Stephen and Stephen's relationship with N.F. * * * Indeed, it was Stephen's relationship with Defendant that facilitated Defendant's crime against N.F. The jurors were entitled to know the history and nature of the relationship between Stephen and Defendant so that they could consider the evidence in context. * * * Because Defendant's sexual relationship with Stephen formed a part of the immediate background of the case and provided the jury with a logical explanation for how Defendant was able to impose his will on Stephen and N.F. without any opposition, the court's admission of the evidence did not constitute error, much less plain error."

{¶ 45} We agree that the state was permitted to set the stage for the events of September 29, 2002. However, the evidence of Hurt's unwanted performance of oral sex on Howell on the previous night falls squarely within Evid.R. 404(B), which provides, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." Howell was not a minor, and this conduct does not demonstrate a pattern of behavior of unlawful sexual contact with a minor. In addition, we question whether the evidence is probative of how Hurt allegedly "imposed his will" on Howell and N.F. Rather, the only obvious purpose of Howell's evidence of Hurt having performed oral sex on him was to demonstrate that Hurt had acted similarly with N.F. on the following day. Accordingly, we find the admission of this evidence to have been improper under Evid.R. 404(B). Because we have concluded above that the admission of pictures was prejudicial error, we need not decide whether the admission of evidence of Hurt's sexual encounter with Howell rises to the level of plain error.

{¶ 46} The third assignment of error is sustained.

{¶ 47} Because the third assignment of error is dispositive, Hurt's first, second, and fourth assignments of error are overruled as moot. With regard to the first and second assignments of error concerning the forfeiture of his computer, the trial court originally included as part of its termination entry, dated September 25, 2003, that Hurt "forfeit his computer, printer and monitor that was used in the commission of this offense, to the Riverside Police Department." However, that sanction was not included in the trial court's revised termination entry, dated October 1, 2003. Because "[a] court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum," e.g., *Schenley v. Kauth* (1953), 160 Ohio St. 109, 51 O.O. 30, 113 N.E.2d 625, paragraph one of the syllabus, Hurt's ultimate sentence did not include the alleged forfeiture, and the assignments of error are moot on that basis.

{¶ 48} The judgment of conviction will be reversed and remanded for further proceedings.

Judgment reversed
and cause remanded.

FAIN, P.J., and GRADY, J., concur.