OPINION
{¶ 1} Appellant, Michelle Miller ("Miller"), appeals her conviction in the Trumbull County Court of Common Pleas for one count of bribery, in violation of R.C. 2921.02(B) and (E).
 {¶ 2} On September 26, 2003, Miller was indicted on one count of bribery, a felony of the third degree, and one count of complicity to escape, a felony of the second degree. The state dismissed count two of the indictment, and the charge of bribery proceeded to a jury trial beginning on May 24, 2004.
 {¶ 3} Miller served as a corrections officer with the Trumbull County Jail in Warren, Ohio, from 1996 until she resigned her position on September 13, 2003. Due to her seniority in the jail facility, Miller worked weekend shifts as an assistant warden, supervising correction officers. In 2002, a federal inmate named Alex Martin ("Martin"), was lodged in the Trumbull County Jail awaiting trial on federal charges of conspiracy to trafficking eleven kilograms of cocaine. Martin contacted the Youngstown Office of Drug Enforcement Administration regarding some of his observations within the Trumbull County Jail. The matter was referred to the FBI. Martin told FBI agent Wallace Sines ("Sines") that certain Trumbull County corrections officers supplied inmates with contraband, arranged conjugal visits, and had formulated a plan with Martin for his escape from the facility. Martin named Miller and Officer Michael Battee ("Battee"), as participants in these activities.
 {¶ 4} At trial, Martin testified that Battee and Miller arranged a conjugal visit between himself and his wife for $1,200 during the weekend when Miller would be working as assistant warden. Battee testified that the going rate for these sorts of visits was up to $1,300. Battee further acknowledged that he was paid in cash by Martin's cousin, Courtney Hubbard ("Hubbard"), for the purchase and delivery of food, magazines, and books. Martin then began to negotiate with Battee to plan his escape from the jail. Battee sought out the assistance of Miller to facilitate the escape plan. Battee testified that Miller agreed to "* * * do the paperwork, * * * falsify information so it could look like it had been an accident that he got let out of jail."
 {¶ 5} Martin commented to Miller that his friend owned a jewelry store in Sharon, Pennsylvania. Martin testified that as a good faith deposit on the $20,000 he was going to pay for the escape, he told Miller to go to his friend's jewelry shop and pick out something she liked. Martin then contacted the jeweler and instructed him to give Miller any jewelry that she chose, up to a price of $300.
 {¶ 6} Miller went to the jewelry store and picked out a bracelet priced at $250. She did not pay for the bracelet, and signed the name of "Candy Daniels" on the receipt for the bracelet. Further, the jeweler wrote the name "Alex Martin" on the receipt and was never paid for the bracelet.
 {¶ 7} Miller testified at trial and denied taking anything of value from Martin for favors. She testified that the bracelet was a gift from Martin in appreciation for calling his wife on his behalf. Miller stated that she did not notice that the bracelet receipt had the name of "Alex Martin" written on it, until she returned home from the jewelry store. Miller denied arranging conjugal visits for Martin and testified that she asked her boyfriend to pay for the bracelet upon his return from New York.
 {¶ 8} Battee then arranged to meet with Hubbard, and Hubbard was prepared to give Battee the sum of $5,000 as a down payment for Martin's escape. However, citing "bad vibes," Battee decided not to go through with the meeting,
 {¶ 9} The jury found Miller guilty on the one count of bribery. On June 8, 2004, Miller filed an alternate motion for acquittal or for new trial. On June 17, 2004, the trial court denied Miller's motion. On June 21, 2004, Miller was sentenced to two years incarceration on the bribery conviction.
 {¶ 10} It is from that judgment entry that Miller filed a timely appeal and asserts the following eight assignments of error:
 {¶ 11} "[1.] The appellant was denied a fair trial when the court repeatedly rebuked her counsel, in the presence of the jury, for asking the state's chief witness highly relevant and proper questions.
 {¶ 12} "[2.] Appellant was denied due process, the effective assistance of counsel and a fair trial in the wake of the court's repeated condemnatory comments directed at Miller's counsel.
 {¶ 13} "[3.] Given the court effectively, and literally, prevented the defense from questioning the state's two critical witnesses about certain relevant facts, and the like, that the jury might reasonably have found to have furnished motives for these witnesses slanting their testimony, or otherwise favoring the state with the benefit of their evidence, it follows then, the accused's right of confrontation, her right to the effective assistance of counsel, and her right to a fair trial, were traversed and otherwise denied.
 {¶ 14} "[4.] The court erred, and in the wake thereof, violated the defendant's right of confrontation when it unduly, improperly and indefensibly restricted the defendant's right to cross-examine the witnesses: Michael Battee and Alex Martin.
 {¶ 15} "[5.] The court erred when it ruled that the defense could not cross-examine any witness concerning his involvement in "other acts" or crimes unless there was a conviction related thereto.
 {¶ 16} "[6.] The trial court's abrupt shut down of the Miller's counsel's effort to cross-examine the witness, Alex Martin.
 {¶ 17} "[7.] The court erred in restricting the cross-examination of FBI Agent Sines.
 {¶ 18} "[8.] The appellant was denied due process when the trial court improperly intruded into the defense's summation, and whether such was intended or not the credibility of a key state's witness was improperly bolstered."
 {¶ 19} In Miller's first and second assignments of error, she contends that comments by the trial court biased the jury. Thus, we shall address them in a consolidated manner.
 {¶ 20} In Ohio, the trial judge is charged with the duty of controlling a criminal trial. R.C. 2945.03 states: "The judges of the trial court shall control all proceedings during a criminal trial, and shall limit the introduction of evidence and the argument of counsel to relevant and material matters with a view to expeditious and effective ascertainment of the truth regarding matters in issue." See also, Statev. Blumensaadt (Sept. 21, 2001), 11th Dist. No. 2000-L-107, 2001-Ohio-4317, 2001 Ohio App. LEXIS 4283, at 26. State v. Jaryga, 11th Dist. No. 2003-L-023, 2005-Ohio-325, at ¶ 61.
 {¶ 21} When exercising this duty, a judge must be cognizant of the effect of his or her comments upon the jury. State v. Wade (1978),53 Ohio St.2d 182, 187. Thus, it is incumbent upon the judiciary to remain detached and neutral in any proceeding before it. State v. Hardy
(Oct. 10, 1997), 11th Dist. No. 96-P-0129, 1997 Ohio App. LEXIS 4588, at 20. "However, this does not mean that a trial judge is precluded from making comments during the course of the trial." Hardy at 20. Instead, when determining whether or not a trial judge's comments were appropriate, a reviewing court must decide whether the remarks were prejudicial to a defendant's right to a fair trial. Wade at 188; Hardy
at 20-21.
 {¶ 22} To facilitate this inquiry, the Supreme Court of Ohio has provided the following factors to consider: "(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury; and (5) to their possible impairment of the effectiveness of counsel." Wade at 188. See, also, Mentor v. Richardson (Dec. 26, 1997), 11th Dist No. No. 96-L-155, 1997 Ohio App. LEXIS 5853, at 6-7; Hardy
at 21.
 {¶ 23} Initially, we note that Miller failed to object to the comments of the trial court during the proceedings of the trial. Under Crim. R. 52(B), however, this court has the power to recognize plain error or defects involving substantial rights even if they are not brought to the attention of the trial court. State v. Haines, 11th Dist. No. 2003-L0-35, 2005-Ohio-1692, at ¶ 30.
 {¶ 24} In the context of a criminal case, a court of review should invoke the plain error doctrine with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice.State v. Jenks (1991), 61 Ohio St.3d 259, 282; State v. Long (1978),53 Ohio St. 2d 91, paragraph three of the syllabus. Thus, plain error does not exist unless, but for the error, the outcome of the proceeding would have been different. Jenks at 282; Long at paragraph two of the syllabus. See, also, State v. Huckabee (Mar. 9, 2001), 11th Dist. No. 99-G-2252, 2001 Ohio App. LEXIS 1122, at 17.
 {¶ 25} In four of the instances cited by Miller, the court directed Miller's counsel to inquire into questioning that was relevant to the issues at hand, and stay within the confines of the rules of evidence. Next, during cross-examination of Martin, the court stated the following to Miller's counsel: "* * *, I am getting to the point now where when I say something, I mean it." Further, Miller also takes issue with the court's statement that a question posed by Miller's counsel to Martin of whether his future plans upon release from prison included drug dealing, was "outrageous." Finally, Miller's counsel was instructed by the court to "sit down," after repeated attempts to elicit testimony from Martin as to whether Martin was an original gangster, "OG," and the definition of that title.
 {¶ 26} Upon review of the record, Miller has failed to demonstrate that these comments were prejudicial. The court's comments in no way expressed an opinion as to the merits of the case. The comments by the court fell within the court's duty to limit the introduction of evidence and the argument of counsel to relevant and material matters. Thus, we do not believe that the above comments by the trial court rose to the level of plain error.
 {¶ 27} Even if the remarks were inappropriate, appellant has provided us with no evidence that the outcome of his trial would have been different if the trial court had not made the statements. The record reveals that before allowing the jury to retire for deliberations, the trial court gave the following curative instruction:
 {¶ 28} "If during the course of the trial, the court said or did anything that you would consider an indication of the court's view on the facts, you are instructed to disregard it." A jury is presumed to follow the instruction of the court. State v. Loza (1994), 71 Ohio St.3d 61, 75.
 {¶ 29} Accordingly, we are unpersuaded that the comments made at trial were prejudicial, much less that they rose to the level of plain error. Based upon the foregoing, it follows that Miller was not denied the effective assistance of counsel by comments made by the trial court.
 {¶ 30} Miller's first and second assignments of error are without merit.
 {¶ 31} In her third, fourth, fifth, sixth, and seventh assignments of error, Miller presents interrelated arguments that the trial court erred by improperly limiting the cross-examination of the state's witnesses, and violated Miller's right to confrontation, right to a fair trial, and effective assistance of counsel. Therefore, we shall address these assignments of error together.
 {¶ 32} The Sixth Amendment to the United States Constitution and the Ohio Rules of Evidence guarantee the right of a criminal defendant to confront the witnesses against him for the biases they may hold. Statev. Minier, 11th Dist No. 2000-P-0025, 2001-Ohio-4285, 2001 Ohio App. LEXIS 4411, at 4; State v. Norwood, 11th Dist. No. 2000-L-146, 2002-Ohio-1359, 2002 Ohio App. LEXIS 1325, at 6. A criminal defendant's right to confront and cross-examine a witness is not unlimited. Delawarev. Van Arsdall (1986), 475 U.S. 673, 679. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." (Emphasis sic.) Id., quoting Delawarev. Fensterer (1985), 474 U.S. 15, 20. Furthermore, the "constitutional right to cross-examine adverse witnesses does not authorize defense counsel to disregard sound evidentiary rules." State v. Amburgey (1987),33 Ohio St.3d 115, 117.
 {¶ 33} While cross-examination itself is a matter of right, the "`extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court.'" State v.Green (1993), 66 Ohio St.3d 141, 147, quoting Alford v. United States
(1931), 282 U.S. 687, 691. Moreover, the trial court may impose reasonable restrictions on the scope of cross-examination based on concerns about harassment, prejudice, confusion of the issues, or relevance of the inquiry. State v. Brown, 11th Dist. No. 2001-T-0146, 2003-Ohio-2364, at ¶ 14, citing Delaware v. Van at 679.
 {¶ 34} Evid. R. 611(A) states that a trial court shall exercise reasonable control over the mode and order of interrogating witnesses. Cross-examination shall be permitted on all relevant maters and matters affecting credibility. Evid R. 611(B).
 {¶ 35} Evid. R. 608(B) concerns evidence of character and conduct of a witness and states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid. R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."
 {¶ 36} Evid. R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness "if clearly probative of truthfulness or untruthfulness." See, also, Statev. Brooks (1996), 75 Ohio St.3d 148, 151. Thus, there is a requirement of a high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination.
 {¶ 37} A reviewing court will not reverse a trial court's ruling on the scope of cross-examination absent an abuse of discretion. State v.Slagle (1992), 65 Ohio St.3d 597, 605. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 38} A review of the transcript reveals that evidence was presented and before the jury of potential motive, i.e., the benefit that both Battee and Martin would receive for their cooperation as witnesses against Miller.
 {¶ 39} With regard to Battee, the trial court did not limit cross-examination concerning his plea as to charges against him arising out of the Trumbull County Jail incidents. Battee testified that that he pled guilty to a nine count indictment charging him with complicity to commit escape, dereliction of duty, and seven counts of bribery. He further testified that in exchange for his testimony that the state would recommend four years incarceration.
 {¶ 40} As to Martin, he testified that that although he made no deal with the state to offer his testimony, his federal charges were reduced from a possible ten years to life to a definite twelve year term of imprisonment as a result of his cooperation with the FBI in this investigation. Thus, the issue of Martin's credibility in testifying against Miller was before the jury.
 {¶ 41} Miller next contends that the trial court improperly curtailed cross-examination of the state's witnesses in several instances as follows. Miller takes issue with the trial court's limitation of cross-examination of Battee's drug dealing activities in the jail. The trial court further held that cross-examination of Battee concerning an FBI report, containing a synopsis of the statement made by Battee concerning drugs brought into in the jail, and not signed or acknowledged by Battee was not admissible under Evid R. 404(B) or 608(B).
 {¶ 42} The trial court further limited the cross-examination of Martin that he was a "gang banger," and regarding the definition of the term "O.G." original gangster.
 {¶ 43} Miller was further prohibited by the trial court from eliciting testimony from Martin about his drug activities in Kentucky. The trial court limited Miller's counsel's inquiry as to whether Martin intended to resume a career as a drug dealer upon release from prison. The trial court terminated the cross-examination of Martin by Miller's counsel, instructing counsel "that's it sit down." The trial court further restricted the cross-examination of FBI agent Sines as to his knowledge of the gang related activities of Martin.
 {¶ 44} Upon review of the entire record, it is clear that there was ample testimony for the jury to consider Martin's and Battee's credibility, character, and motive to testify against Miller. Miller's counsel was permitted wide latitude in its cross-examination of the state's witnesses. In addition, it is unclear to this court as to how the trial court interfered with Miller's right to put on a defense.
 {¶ 45} The trial court held an in camera hearing to discuss the admissibility of the FBI statement, which Miller's counsel alleged would be used to show that "[Battee] was a drug dealer." The transcript reveals the following colloquy:
 {¶ 46} "[Miller's counsel]: * * * I feel I have the right to show specific acts under Rule 608, given the court has some discretion, but I think to say that I am not entitled to show [Batte] was a drug dealer, * * * cannot be validated as an appropriate entry. He is a drug dealer, he admits as much he brought drugs into the jail * * *.
 {¶ 47} "[THE COURT]: To the extent that [Battee's] testifying about his knowledge about what happened and what the relationship was between [Miller] in this case and himself and Alex Martin, all of that is admissible for the purposes of cross examination * * * I am going to limit any additional cross examination to anything that happened as it relates to his knowledge of the crime that was involved in this case * * * as opposed to some unrelated people in an unrelated situation. * * * [Battee] was interviewed as best as I can tell, and there is a synopsis that you have shown me that isn't his official statement that deals not only with this case but unrelated matter[s]. Anything he said about this case, that is the subject of proper cross examination, if he makes a different statement relating to anything that happened in this case * * * is fair game."
 {¶ 48} Accordingly, upon cross-examination of Battee, Miller's counsel was permitted to make the following inquiry into his role in the delivery of drugs into the jail: "When you were interviewed by the FBI did you tell them that you agreed to meet with Mr. Hubbard in the parking lot * * * for the purpose of picking up some drugs and money and delivering the drugs to Mr. Alex Martin?
 {¶ 49} "[Battee]: Yes, I did tell them that I would meet him.
 {¶ 50} "[Miller's counsel]: Thank you. You told them that."
 {¶ 51} The court further permitted introduction of testimony from Martin that he was a member of a California street gang called "the Bloods." The court noted the following as to Miller's counsel's questioning that Martin was a "gang banger:" "I am trying to see when we are going to get to the facts of this case." Miller's counsel thereafter withdrew the question.
 {¶ 52} Miller's counsel was further permitted by the court to cross-examine Martin relative to his pending federal sentence of conspiracy to distribute eleven kilograms of cocaine. The court permitted Miller's counsel to elicit testimony from Martin that the potential sentence for his present federal conspiracy charge was "ten to life."
 {¶ 53} However, the trial court limited Miller's counsel's inquiry as to whether Martin intended to re-embark on his former career as a drug dealer, upon release from prison. In this instance, the court instructed the jury to "* * * disregard this incredibly outrageous line of questioning."
 {¶ 54} On cross-examination, Miller's counsel sought to inquire about Martin's criminal history. In response, the court indicated that "criminal history is whatever convictions he has." In his testimony, Martin testified regarding his prior convictions, as follows: "I said dui's, carrying a concealed weapon, and manslaughter."
 {¶ 55} The record demonstrates that Miller's counsel was granted wide latitude in cross-examination of the state's witnesses. The jury heard questions asked of both Martin and Battee, regarding their credibility and character. The record reveals that issues of the character of both Martin and Battee were clearly before the jury.
 {¶ 56} We further see no error committed by the trial court in limiting Miller's counsel's cross-examination of Sines regarding the FBI's knowledge of Martin's prior gang involvement. Again, the record reveals that there was evidence before the jury of Martin's gang affiliation. Further, the transcript reveals the following exchange between Miller's counsel and Sines:
 {¶ 57} "[Miller's counsel]: Is it fair to say then that you took what's gospel everything that Mr. Martin told you?'
 {¶ 58} "[Sines]: no."
 {¶ 59} Thus, Miller's counsel was permitted to establish that the FBI may not have found Martin to be completely reliable.
 {¶ 60} The crux of Miller's arguments under these assignments of error is that she was not given free reign on cross-examination to disparage and discredit Martin and Battee. "Evidence of a witness's bad moral character, as opposed to truthfulness or untruthfulness, is inadmissible." State v. Mann (1985), 19 Ohio St.3d 34, 37. Moreover, criminal activities not resulting in conviction cannot ordinarily form the basis for an attack upon a witness's credibility. State v. Hurt,158 Ohio App. 3d 671, 2004-Ohio-4266, citing State v. Skatzes,
2nd Dist. No. 15848, 2003-Ohio-516.
 {¶ 61} The record is clear that the trial court was acting within its duty to control the flow of relevant and material information as it applied to Miller's case before the court. The trial court properly limited the cross-examination of Martin and Battee to instances of specific conduct, "clearly probative" of truthfulness or untruthfulness. Evid. R. 608(B).
 {¶ 62} Based upon the foregoing, Miller's third, fourth, fifth, sixth, and seventh assignments of error are without merit.
 {¶ 63} In her eighth assignment of error, Miller contends that she was denied due process when the trial court interrupted her counsel's summation. Miller asserts that the comments made by the trial court "bolstered" the credibility of Battee. We disagree.
 {¶ 64} Initially, as Miller failed to object to the trial court's remark, she has waived appellate review of the issue. Wade. Therefore, we shall apply the plain error standard to this assignment of error.
 {¶ 65} It is axiomatic that great latitude is afforded counsel in the presentation of closing argument. The assessment of whether the permissible bounds of closing argument have been exceeded is a discretionary function to be performed by the trial court. Such determination will not be reversed on appeal absent an abuse of discretion. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. It is the duty of the trial court to control the argument of counsel and to see that it is confined to proper limits, especially where a timely objection was made. Pang v. Minch,53 Ohio St.3d 186, 194.
 {¶ 66} In the case at bar, the following colloquy took place during Miller's counsel's closing argument:
 {¶ 67} "[Miller's counsel]: We come back to Mr. Battee * * * Now he is apprehended in connection with some sexual episodes and what they call fraternization. Well that is not a crime. They can give you some days off maybe or fire you * * *.
 {¶ 68} "[Counsel for the state]: Judge, I don't believe there is any testimony that fraternization results in disciplinary actions other than criminal actions.
 {¶ 69} "[Miller's counsel]: There is no criminal action on this fraternization.
 {¶ 70} "THE COURT: Well, it's semantics as to what fraternization is. If it's a sexual offense, it certainly can be but that there wasn't any evidence one way or the other.
 {¶ 71} "[Miller's counsel]: Right. * * *"
 {¶ 72} Miller's counsel then proceeded to discuss Battee's sexual encounters in the jail. We further note that the court instructed the jury as follows: "[y]ou are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence. * * * You have heard testimony from * * * Battee, another person who pleaded guilty to the same crime charged in this case, and is * * * an accomplice. * * * [T]estimony of a person who you find to be an accomplice should be viewed with grave suspicion. And weighed with great caution." Based upon the foregoing, we cannot conclude that the outcome of defendant's trial would have been different had the trial court not commented on the matter of "fraternization." Miller's eighth assignment of error is without merit.
 {¶ 73} For the foregoing reasons, Miller's eight assignments of error are without merit, and the judgment of the Trumbull County Court of Common Pleas is affirmed.
O'Neill, J., Christley, J., Ret., Eleventh Appellate District, sitting by assignment, concur.