OPINION
{¶ 1} Defendant-appellant, Chris Rogers, appeals his convictions and sentence in the Fayette County Court of Common Pleas for aggravated murder and tampering with evidence. We affirm the convictions, vacate his sentence, and remand the matter for resentencing.
 {¶ 2} On January 17, 2003, appellant and Nathan Soward, along with several other friends, spent the evening together, drinking alcohol, smoking marijuana, and using cocaine. Appellant later phoned W.B., a minor, and invited him to join the group. He was overheard telling W.B. that "[it] was going to go down like Tupac."[1] W.B. and another friend, J.Y., also a minor, went to appellant's apartment where more drugs were consumed. In the early morning hours of January 18, 2003, Soward was ready to leave and he, J.Y., and appellant departed in appellant's truck. At trial, J.Y. testified that appellant was too intoxicated to drive; consequently, J.Y. drove. While they were traveling, and without warning, J.Y. heard two gunshots, turned, and saw Soward slump over. Shocked and upset over this turn of events, he stopped the truck, got out, and climbed into the bed of the truck. He told appellant he wanted to go home and appellant started driving. A short time later appellant stopped along an isolated road, and after a few moments, J.Y. got back inside the truck and discovered that Soward's body was no longer there. Appellant testified that he was the driver and without warning, heard two shots, and saw Soward slump over. He testified that he and J.Y. then drove to an isolated area and J.Y. asked him to help move Soward's body.
 {¶ 3} The next day appellant power washed his truck and laundered his clothing, including the coat he had been wearing. W.B. washed and bleached the gun, and he and J.Y. later gave it to a drug dealer in exchange for marijuana. Appellant recounted the previous night's events to W.B., telling him that he had shot Soward in the head and described disposing of his body. Soward's body was soon after discovered by a passersby in an isolated area of Fayette County.
 {¶ 4} A few days later appellant was arrested on a probation violation and questioned about the murder. After several hours of questioning by police, he implicated himself in the murder and provided a written confession which stated: "The death of Nathan Sowards was caused by a gunshot fired by Chris Rogers." Appellant was charged with aggravated murder and tampering with evidence. The matter proceeded to trial and a jury found appellant guilty of the charges. He was sentenced to life imprisonment with the possibility of parole after 20 years for aggravated murder, and a consecutive five-year prison term on the tampering with evidence charge. He appeals his conviction and sentence, raising eight assignments of error.
 {¶ 5} Assignment of Error No. 1:
 {¶ 6} "The trial court erred by prohibiting defense counsel from asking about [J.Y's] history of breaking into the homes of drug dealers and stealing their guns, as well as his history of using guns."
 {¶ 7} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Issa,93 Ohio St.3d 49, 2001-Ohio-1290. An abuse of discretion connotes more than an error in law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. See State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶48.
 {¶ 8} In his first assignment of error, appellant argues that the trial court erred by sustaining the state's objection to the following question: "do you ever go out looking for excitement with [W.B.]?" "Excitement" was clarified by counsel to mean "robbing houses." Appellant argues that the testimony should have been allowed as it demonstrates that J.Y. "had a preparation and plan to steal Appellant's gun, as well as the knowledge to carry out the plan."
 {¶ 9} Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith on a particular occasion. See Evid.R. 404(B); State v. Curry (1975),43 Ohio St.2d 66, 68-69. However, such evidence may be used for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Evid.R. 404(B). We note that appellant's contention that J.Y. planned to, and in fact did steal his gun, is unsupported by any evidence in the record. Further, we conclude that the trial court's ruling was not an abuse of its discretion as the evidence was not offered for a permitted "other purpose," but rather only to discredit J.Y.'s character. Evidence that J.Y. had burglarized other homes and stolen firearms is not evidence of his plan or preparation to steal appellant's gun as appellant contends.
 {¶ 10} Appellant also argues that the evidence was relevant to establish J.Y.'s propensity for truthfulness, and should have been admitted under Evid.R. 608(B). This rule concerns evidence of character and conduct of a witness and states: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of a crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness * * *."
 {¶ 11} Evid.R. 608(B) vests a trial court with discretion to allow cross-examination about specific instances of conduct of a witness "if clearly probative of truthfulness or untruthfulness." See, also, State v. Brooks, 75 Ohio St.3d 148, 151,1996-Ohio-134. Consequently, there is a requirement of a "high degree of probative value of instances of prior conduct as to truthfulness or untruthfulness of the witness before the trial court will allow such cross-examination." State v. Miller,
Trumbull App. No. 2004-T-0082, 2005-Ohio-5283, ¶ 35.
 {¶ 12} In the present case, appellant wished to cross-examine the witness about unsubstantiated allegations that he had stolen weapons. Given the tenuous nature of appellant's assertion, we find that the trial court did not abuse its discretion in sustaining the state's objection to the question. Appellant's first assignment of error is overruled.
 {¶ 13} Assignment of Error No. 2:
 {¶ 14} "The trial court erred by ordering Appellant to disclose attorney-client communication."
 {¶ 15} In his second assignment of error, appellant argues that the prosecution improperly asked appellant to divulge attorney-client privileged information, over his objection. Appellant alleges that the prosecutor improperly asked what his first attorney (who was later replaced by appellant's trial counsel) had told him with regard to taking a polygraph examination.
 {¶ 16} Contrary to appellant's assertion, appellant's trial counsel lodged no objection to this exchange. Trial counsel did object a short time later when the prosecutor inquired whether appellant had asked his present counsel to arrange for a polygraph test. Trial counsel objected to "any discussions between my client and I."
 {¶ 17} Even though the topic of a polygraph exam had been developed on direct examination by appellant's counsel, the question asked of appellant concerning communications with his current attorney had the potential of invading the attorney-client privilege. However, the permitted answer, "no, we have not," did not disclose any attorney-client communication. Although it was error to permit the testimony, appellant was not prejudiced as the testimony did not disclose any attorney-client communication. As a result, the error was harmless. See State v.Elliot (1993), 91 Ohio App.3d 763, 771; Columbus v. Taylor
(1988), 39 Ohio St.3d 162, 166. The second assignment of error is overruled.
 {¶ 18} Assignment of Error No. 3:
 {¶ 19} "The trial court erred by permitting the State to introduce into evidence statements Appellant made after asking to make a phone call seeking a lawyer."
 {¶ 20} Although not noted in appellant's brief, the trial court's decision permitting appellant's statements to be admitted at trial was made in the context of ruling on appellant's motion to suppress evidence.
 {¶ 21} An appellate court's review of a ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate witness credibility. State v. Curry
(1994), 95 Ohio App.3d 93, 96. As such, we accept the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. However, an appellate court independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, "whether as a matter of law, the facts meet the appropriate legal standard." Curry at 96.
 {¶ 22} Before interrogating appellant, police informed him of his Miranda rights, and appellant acknowledged that he understood them verbally, and by signing a written waiver of those rights. When asked to explain his understanding of the right to counsel, appellant responded: "if I don't feel comfortable by myself I have the right to either have my parents or I hire a lawyer or have one appointed for me." Several times during the course of the interrogation appellant expressed a desire to speak with his father, but only once, when he was about to write his confession, did he ask for an attorney, inquiring if he could "write this with a lawyer." He was informed that he could but that there was no lawyer there, and he proceeded to provide a written confession.
 {¶ 23} If a suspect in a criminal investigation requests counsel at any time during questioning, he is not subject to further interrogation until a lawyer has been made available or until he reinitiates the conversation. Edwards v. Arizona
(1981), 451 U.S. 477, 484-485, 101 S.Ct. 1880. However, "[i]nvocation of the Miranda right to counsel `requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'"State v. Davis (1994), 512 U.S. 452, 459, 114 S.Ct. 2350, 2355. The Court in Davis held further:
 {¶ 24} "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspectmight be invoking the right to counsel, precedents do not require the cessation of questioning. * * * Rather, the suspect must unambiguously request counsel. * * * [A] suspect * * * must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Id. (citations omitted).
 {¶ 25} Statements less ambiguous than appellant's have been found to be too ambiguous to require that questioning cease. See, e.g., Davis (remark by accused that "[m]aybe I should talk to a lawyer" was not a request for counsel); Ledbetter v. Edwards
(C.A.6, 1994), 35 F.3d 1062, 1070 (statement by accused that "[i]t would be nice" to have an attorney present was too ambiguous to require questioning to cease). Here, appellant's statement was no less ambiguous than those in Davis orLedbetter. Therefore, we do not find that it was a formal, unequivocal request for an attorney such that it mandated the cessation of all further interrogation. Accordingly, the trial court did not err in admitting the statements made by appellant during the interrogation. Appellant's third assignment of error is overruled.
 {¶ 26} Assignment of Error No. 4:
 {¶ 27} "The trial court erred by permitting the prosecutor to engage in improper remarks during closing arguments."
 {¶ 28} In his fourth assignment of error, appellant contends that his convictions should be reversed because he was unfairly prejudiced when the prosecutor remarked in closing arguments that the "reason we have all been here twelve days is because the Defendant plead not guilty and came up with a desperate defense. That's the only reason." Appellant contends that the statement is prosecutorial misconduct which should result in a new trial.
 {¶ 29} We initially note that appellant failed to object to this alleged improper comment about which he now complains; he has therefore waived all but plain error. See State v. Slagle
(1992), 65 Ohio St.3d 597; Crim.R. 52(B). "Plain error does not exist unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise." State v.Moreland (1990), 50 Ohio St.3d 58, 62. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978),53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 30} When reviewing allegations of prosecutorial misconduct, appellate courts must consider that "the touchstone of due-process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." State v. Hill, 75 Ohio St.3d 195, 203,1996-Ohio-222, quoting Smith v. Phillips (1982), 455 U.S. 209,219, 102 S.Ct. 940. The Ohio Supreme Court has held that prosecutorial misconduct is not grounds for error unless the defendant has been denied a fair trial. State v. Maurer (1984),15 Ohio St.3d 239, 266. In order to reverse a conviction based on prosecutorial misconduct, the defendant must prove that the comments were improper and that they prejudicially affected the defendant's substantial rights. State v. Smith (1984),14 Ohio St.3d 13, 14.
 {¶ 31} We agree with appellant that he was legally and procedurally entitled to plead not guilty, rely upon the presumption of innocence, and require the state to prove its case. State v. Landrum (1990), 53 Ohio St.3d 107, 111, fn. 1; see Crim.R. 11. The state's comment on his not guilty plea was consequently improper. Id. Regardless, we do not believe that the improper conduct prejudicially affected the substantial rights of appellant. The state of the evidence was such that appellant was not deprived of a fair trial, and the court instructed the jury both on the effect of the not guilty plea and that counsel's arguments were not evidence. Appellant's fourth assignment of error is overruled.
 {¶ 32} Assignment of Error No. 5:
 {¶ 33} "The trial court erred by imposing a void sentence."
 {¶ 34} In his fifth assignment of error, appellant contends that his sentence is void as the trial court failed to inform him at the sentencing hearing that he would be subject to post-release control.
 {¶ 35} The Ohio Supreme Court has definitively held that a trial court "is duty-bound to notify [an] offender at sentencing about post-release control." State v. Jordan,104 Ohio St.3d 21, 2004-Ohio-6085, ¶ 22. The Court, construing R.C.2929.19(B)(3), 2967.28(B), and 2967.28(F)(3), held that a trial court "is required to notify the offender at the sentencing hearing about post-release control and is further required to incorporate that notice into its journal entry imposing sentence." Jordan, paragraph one of the syllabus; R.C.2929.19(B)(3). The Supreme Court, with reference to its decision in Comer, observed that notifying the offender is best achieved by "personally advising" him at the sentencing hearing. SeeJordan at fn. 2; R.C. 2929.19(B)(3).
 {¶ 36} Accordingly, "when a trial court fails to notify an offender about post-release control at the sentencing hearing but incorporates that notice into its journal entry imposing sentence, it fails to comply with the mandatory provisions of R.C. 2929.19(B)(3)(c) and (d), and, therefore, the sentence must be vacated and the matter remanded to the trial court for resentencing." Id.
 {¶ 37} The state concedes, and review of the record confirms, that the trial court did not inform appellant of post-release control at the sentencing hearing. The trial court's failure to properly advise appellant of post-release control requires that his sentence be vacated and this matter remanded for resentencing. Appellant's fifth assignment of error is sustained.
 {¶ 38} Appellant raises three final assignments of error related to his sentence:
 {¶ 39} Assignment of Error No. 6:
 {¶ 40} "The trial court erred by imposing a maximum, consecutive sentence without explaining the reasons."
 {¶ 41} Assignment of Error No. 7:
 {¶ 42} "A trial court may not impose a non-minimum prison term in the absence of jury findings of the factors set forth in R.C. 2929.14(C) and (E)(2)."
 {¶ 43} Assignment of Error No. 8:
 {¶ 44} "The trial court erred by imposing a fine without considering Appellant's ability to pay."
 {¶ 45} Having determined in our resolution of appellant's fifth assignment of error that his sentence must be vacated and this matter remanded for resentencing, we find that his final three assignments of error related to the imposition of sentence are rendered moot. See App.R. 12(A)(1)(c); see, also, State v.Newman, Summit App. No. 21970, 2004-Ohio-5180, ¶ 18, appeal not allowed, 105 Ohio St.3d 1408, 2005-Ohio-279 (holding that failure to advise defendant of post-release control requires that sentence be vacated, thus rendering other sentencing issues moot).
 {¶ 46} Judgment affirmed in part, reversed in part, and remanded for resentencing.
Powell, P.J., and Bressler, J., concur.
[1] Appellant clarified at trial that Tupac was a rapper who was killed by a gunshot while riding in a car, and that there are no suspects in his death.