[Cite as *State v. Zerucha*, 2016-Ohio-1300.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-A-0031** |
| ASHLEY SUE ZERUCHA, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2015 CR 143.

Judgment: Affirmed.


*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michelle M. French*, Law Offices of Michelle M. French, LLC, P.O. Box 293, Jefferson, OH 44047 (For Defendant-Appellant).


TIMOTHY P. CANNON, J.

{¶1} Appellant, Ashley Sue Zerucha, appeals from the judgment of the Ashtabula County Court of Common Pleas denying her motion to suppress evidence. She additionally challenges her conviction, arguing she was prejudiced by remarks made by the trial judge as well as her trial counsel's alleged ineffectiveness. Based on the following, we affirm.

{¶2}    At approximately 9:30 p.m., February 3, 2015, Deputy Matthew Johns and Sergeant Brian Cumberledge, of the Ashtabula County Sheriff Department, arrived at 1641 East Prospect Rd., Ashtabula City, Ashtabula County, to execute an arrest warrant issued pursuant to an outstanding indictment issued against appellant. The officers approached the building and noticed a closed-circuit camera in the common area. They ascended to the second floor of the building where there were two separate apartments. The officers observed a second closed-circuit monitor pointing at the area where they were standing.

{¶3}    Although neither officer knew which of the two apartments belonged to appellant, they knew she had a small dog. They heard a dog barking in the west-most apartment and knocked; a female voice responded, asking, "who is it?" The officers answered "Sheriff's office," and the voice replied, "wait a minute." A male voice subsequently advised, "Ashley's not here." The officers asked the person: "How did you even know we were inquiring about Ashley?" A man opened the door to the apartment and identified himself as Cory Felasco.

{¶4}    The officers advised Felasco they had an arrest warrant for appellant. Felasco stated appellant had borrowed his car and left the apartment earlier in the evening. The officers, however, questioned Felasco about the female voice. Felasco stated, without explanation, that he feigned the female voice in order to respond to the knock. The officers advised Felasco they had reason to believe appellant was in the apartment and entered the dwelling to locate her.

{¶5}    Sergeant Cumberledge commenced a search of the living room and kitchen area. During his search, Sergeant Cumberledge noticed the apartment had a means of ingress and egress separate from the front door. The passage allowed the

2

officer to leave appellant's apartment and enter a hallway that eventually led to the building's basement.

{¶6} While Sergeant Cumberledge searched for appellant in the open areas of the apartment, Deputy Johns searched appellant's bedroom. Upon entering the bedroom, he observed a methamphetamine pipe on the bed. He further observed a duffle bag underneath a small desk "overflowing" with coffee filters, funnels, tubing, and chemicals associated with the manufacture of methamphetamine. The officer further observed additional chemical containers in a small garbage can near the bag. The officers recognized these items are commonly used in the "one-pot" method of manufacturing methamphetamine.

{¶7} Detective Bryan Rose of the Ashtabula County Sheriff's Department was called to assist in the investigation and remediate the scene. Upon his arrival, he photographed and collected the items, separating them into buckets for eventual destruction. During the remediation, Detective Rose observed a light bulb, small plastic bags, and a container of salt. He also noticed a pop bottle underneath an end stand in the living room. The detective surmised the bottle had been used to manufacture methamphetamine. He subsequently collected liquid from the bottle for testing.

{¶8} Test results later revealed a plastic bag retrieved from the apartment contained methamphetamine residue; moreover, the liquid residue collected from the bottle by Detective Rose contained methamphetamine.

{¶9} Appellant was indicted on one count of aggravated trafficking in drugs, in violation of R.C. 2925.03, a felony of the first degree; one count of aggravated possession of drugs, in violation of R.C. 2925.11, a felony of the first degree; one count of illegal manufacture of drugs, in violation of R.C. 2925.04, a felony of the second

3

degree; one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.04, a felony of the third degree; and one count of possessing criminal tools, in violation of R.C. 2923.24, a felony of the fifth degree. Appellant pleaded not guilty to the charges.

{¶10} Appellant filed a motion to suppress evidence, which was denied. The matter proceeded to a jury trial. Appellant failed to appear on the second day of trial. The court subsequently revoked her bond and a capias was issued. Later that morning, appellant was located and arrested. The trial recommenced and the jury found appellant guilty of all charges except the aggravated trafficking in drugs count, of which she was acquitted. The trial court determined all counts were allied offenses which merged for sentencing purposes. The state elected to proceed to sentencing on the aggravated possession of drugs count. Appellant was sentenced to a seven-year term of imprisonment.

{¶11} Appellant assigns three errors for this court's consideration. Her first assignment of error alleges:

> The trial court erred to the prejudice of the Appellant through the admission of evidence obtained from a search and seizure without a search warrant or consent from Appellant. The warrantless search is in violation of the Appellant's rights under the Constitution[s] of the United State[s] and the State of Ohio.

{¶12} Appellant argues the evidence seized from her apartment should have been suppressed because the search occurred without her consent, without a valid search warrant, and without a valid exception to the search warrant requirement of the Fourth Amendment. We disagree.

{¶13} Generally, the Fourth Amendment prohibits the police from making a warrantless nonconsensual entry into a suspect's home in order to make a felony arrest.

4

*Payton v. New York*, 445 U.S. 573, 588-589 (1980). The *Payton* Court held, however, that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603. Accordingly, pursuant to *Payton*, an arrest warrant is sufficient to enter a person's residence to effectuate the warrant if the police have reason to believe that the suspect lives in the home and is in fact at the home at the time the arrest warrant is executed. "Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *United States v. Pruitt*, 458 F.3d 477, 482 (6th Circ.2006), citing *United States v. McKinney,* 379 F.2d 259 (6th Circ.1967).

{¶14} Appellant does not contest that the arrest warrant the officers were executing was founded on probable cause. Moreover, she does not contest the fact that the apartment in question was her residence. These facts, coupled with the female voice that initially responded to their knock, provided the officers with sufficient reason to believe appellant was concealed in the apartment. We therefore conclude the officers possessed the limited authority to enter the residence to confirm whether she was present in order to arrest her pursuant to the warrant.

{¶15} Next, we must consider whether the officers, upon entering the residence, exceeded the limited authority conferred by *Payton*. We hold they did not.

{¶16} It is long-settled law that objects falling within the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced as evidence. *Ker v. California*, 374 U.S. 23, 43 (1963); *State v. Williams*, 55 Ohio St.2d 82, 85 (1978). The United States Supreme Court has observed:

5

> What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification -- whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused -- and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.

*Coolidge v. New Hampshire*, 403 U.S. 443, 466 (1971).

{¶17} Under the plain-view exception to the search warrant requirement, police may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a right of access to the object itself; and (3) the object's incriminating character is immediately apparent. *Horton v. California*, 496 U.S. 128, 136-137 (1990).

{¶18} In this case, Deputy Johns testified, upon entering into appellant's bedroom, he observed a pipe used for smoking methamphetamine on the bed. He also observed an open duffle bag filled with items commonly used in the manufacture of methamphetamine, e.g., coffee filters, tubes, funnels. In light of these observations and the officer's knowledge that methamphetamine labs are highly combustible, he notified Detective Rose, who arrived at the scene to remediate the evidence. Detective Rose observed additional evidence of a methamphetamine lab open and unconcealed in the apartment: a pop bottle containing residue; salt; and small plastic baggies.

{¶19} Deputy Johns noticed the pipe and the items in the duffel bag while lawfully present. Because these items were unobstructed and within his plain sight, he had a right of access to these objects. Finally, while the items in the bag, in isolation,

6

might not be inherently incriminating, all of them together and their proximity to the pipe permit the immediate inference they are incriminating. This analysis is also applicable for the items seized as a result of Detective Rose's observations. These items were in plain view, the officers were in a place they were entitled to be when they observed them, and they were therefore subject to seizure.

{¶20} We note that the state cites R.C. 2933.33 as an independent justification for the officer's ultimate seizure of the items in appellant's apartment. It provides:

> (A) If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.

{¶21} Although both Sergeant Cumberledge and Deputy Johns testified to the dangerous and volatile nature of methamphetamine manufacturing, they had no probable cause to believe such activities were occurring at appellant's apartment *until* they observed the equipment in the duffel bag in plain view. Moreover, there was nothing, e.g., the pungent odor of methamphetamine manufacture, to suggest the lab was active at the time the officers lawfully entered the premises. Thus, under the circumstances of this case, we decline to apply R.C. 2933.33 as a separate basis for upholding the search.

{¶22} Because the officers were lawfully present in the apartment and observed the incriminating evidence in plain view, we hold the trial court did not err in denying appellant's motion to suppress.

{¶23} Appellant's first assignment of error lacks merit.

7

**{¶24}** Because they are related, we address appellant's second and third assignments of error together. They provide:

> [2.] The due process and fair trial rights of the Defendant-Appellant were violated by the ineffective assistance of her counsel, in violation of the Sixth and Fourteenth Amendments to the U.S. Constitution and Article I, Sections 10 and 16, of the Ohio Constitution.

> [3.] The Appellant's right to a fair trial under the Sixth Amendment of the United States Constitution and the Constitution of the State of Ohio was violated by the Trial Judge's prejudicial remarks.

**{¶25}** Under appellant's second assignment of error, she asserts the trial court's comments to the jury, in light of her failure to appear on the second day of trial, should have been objected to and counsel should have moved for a mistrial. Appellant argues this failure rises to ineffective assistance of counsel. Similarly, under her third assignment of error, appellant asserts the trial court's comments were prejudicial and tainted the jury. As a result, she argues the court's remarks violated her right to a fair trial. We disagree.

**{¶26}** For appellant to prevail on her claim of ineffective assistance of counsel, we must first conclude that counsel's performance fell measurably below that which might be expected from an ordinary fallible attorney. Second, we must conclude that appellant suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, appellant must show, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Seiber*, 56 Ohio St.3d 4, 11 (1990). A reviewing court indulges a strong presumption that counsel's conduct is within the wide range of reasonable professional representation. *Strickland, supra*, at 689.

8

{¶27} Further, it is well settled that a trial judge must be aware of the effect of his or her comments upon a jury. *State v. Miller*, 11th Dist. Trumbull No. 2004-T-0082, 2005-Ohio-5283, ¶21. This does not imply that a trial judge may not make comments during the course of a trial. *Id.* When evaluating whether a trial judge's remarks were proper, an appellate court must decide whether the comments were prejudicial to a defendant's right to a fair trial. *Id.*

{¶28} The record indicates appellant was injured in an auto accident on the morning of her second day of trial. The court explained this to the jury and stated, although her injuries did not appear serious, she was sent to the emergency room. The court consequently adjourned until the following day. Appellant, however, failed to appear for trial the following morning. As a result of this absence, the court addressed the jury, noting that a defendant's absence is "just something that doesn't happen very often" and was "causing another bit of an unexpected delay." The court continued:

> She was expected to be here today and I think had informed her lawyer that she would be, but right at this point we're not exactly sure what happened. So we're trying to confirm that she's okay, that nothing else has happened to her, and at this point I've determined since you've been back there over an hour now and I know that that room is not the most comfortable one to be in, that I'm going to go ahead and take a recess now and just allow you to do whatever you want for the next couple of hours. * * *

> I do want to tell you that you know as jurors ultimately any decision that's made in this case has to be based on the evidence so you shouldn't be speculating or drawing any inferences about what's happened and the delays that have occurred in the case. That should not enter into your consideration of the evidence in any way but for now, until I can confirm for sure what the situation is with Ms. Zerucha, I'm going to just go ahead as I said and allow you to have this morning free. So I apologize for what's happening but sometimes these things cannot be helped.

9

{¶29} Even though the trial court noted the circumstances of appellant's absence were unusual and that her absence had caused an unexpected delay, these observations were neither derogatory nor did they suggest the court was urging the jury to treat appellant unfairly due to her absence. To the contrary, the follow-up comments made by the court suggest the court was actually concerned for her well-being. The court gave an appropriate limiting instruction that the jury should neither speculate on the basis of appellant's absence nor allow the delays to contaminate its deliberations.

{¶30} "'Mistrials should only be declared when the ends of justice so require and a fair trial is no longer possible.'" *State v. Albanese*, 11th Dist. Portage No. 2005-P-0054, 2006-Ohio-4819, ¶26, quoting *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991). Under the circumstances, the court's comments did not compromise the fairness of appellant's trial. Because the comments of the trial court were appropriate, we conclude counsel did not act unreasonably in failing to object to the court's statements or move for a mistrial. We further hold appellant suffered no prejudice as a result of the court's comments.

{¶31} Appellant's second and third assignments of error lack merit.

{¶32} For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


DIANE V. GRENDELL, J.,

THOMAS R. WRIGHT, J.,

concur.