[Cite as *State v. Cooks*, 2017-Ohio-218.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2016-CA-40 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-23 |
| | : | |
| FREDERICK COOKS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of January, 2017.

. . . . . . . . . .

MEGAN M. FARLEY, Atty. Reg. No. 0088515, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
        Attorney for Plaintiff-Appellee

MATTHEW BARBATO, Atty. Reg. No. 0076058, 2625 Commons Boulevard, Suite A., Beavercreek, Ohio 45431
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, P.J.

        {¶ 1} Frederick Cooks appeals from his conviction and sentence following a no-contest plea to charges of evidence tampering, possession of cocaine, and possession

of heroin.

{¶ 2} In his sole assignment of error, Cooks contends the trial court should have suppressed the drug evidence against him because police discovered it while unlawfully executing a warrant for his arrest.

{¶ 3} Suppression hearing testimony reflects that a warrant was issued for Cooks' arrest in early November 2015. The warrant stemmed from a felony charge of failure to comply with an order or signal of a police officer. The failure-to-comply incident involved Cooks allegedly fleeing from police in a vehicle outside of a residence at 35 East Cecil Street. Springfield police officer Tyler Elliott took possession of the warrant and began looking for Cooks.

{¶ 4} As part of his investigation, Elliott accessed the Facebook page of Cooks' known girlfriend, Chontay Lumford, and saw pictures of Cooks sitting in a house that the officer believed to be 35 East Cecil Street. In the course of his work, Elliott also saw two people he later determined to be Cooks and Lumford participating in an apparent drug deal in a parking lot between a hotel and a retail store. Elliott later spoke to the hotel receptionist, who positively identified Cooks as the person Elliott had seen. The receptionist explained that Cooks had been staying in a room rented by Lumford but he already had checked out.

{¶ 5} Shortly after speaking to the receptionist, Elliott proceeded to 35 East Cecil Street, where he believed Cooks lived with Lumford. Elliott believed this because other detectives had seen Cooks there while conducting surveillance for drug complaints and because 35 East Cecil Street was the location of the failure-to-comply offense for which the arrest warrant had been issued. Elliott and other officers proceeded to surround the

residence. Elliott then knocked on the front door and announced the officers' presence. In response, he saw the window blinds move and heard "scurrying inside the house, somebody moving around, but [he] didn't receive an answer." (Suppression Tr. at 13). Elliott explained during the suppression hearing that the scurrying-type sound is "very common when someone is going to hide. You just hear unusual noises coming from inside the house." (*Id.* at 23). On cross examination, Elliott elaborated on the noise he heard coming from inside the house. He explained the noise as follows: "Just noise like somebody is moving quickly inside the house. I know that's kind of a vague way to describe it, but it didn't sound like somebody was calmly walking away from the front door. It sounded like somebody was hustling away." (*Id.* at 27).

{¶ 6} After hearing the scurrying sound, Elliott stepped away from the house and spoke to nearby residents. One of them viewed a photograph of Cooks and confirmed that he resided at 35 East Cecil Street with Lumford, his girlfriend. (*Id.* at 13, 23). Upon receiving that information, Elliott and other officers announced their presence again and proceeded to pick the front-door lock and enter the residence. (*Id.* at 28-29). Once inside, they encountered Lumford's brother, Deshawn, who came downstairs and made contact with the officers. (*Id.* at 29-31). When asked if anyone else was home, Deshawn responded, "[I]f anybody is here, I don't know about it[.]" (*Id.* at 32). The officers proceeded to search the house for Cooks and found him hiding in the attic. (*Id.* at 13). They also observed in plain view what appeared to be drugs hastily thrown under an attic floorboard but still visible. (*Id.* at 13). After being advised of his *Miranda* rights, Cooks took responsibility for the drugs the officers saw. (*Id.* at 16). Based on what they had observed inside the house while looking for Cooks, the officers then obtained a search warrant and

apparently found additional drugs. (*Id.* at 35-37).

**{¶ 7}** In overruling Cooks' suppression motion, the trial court held that the officers were authorized to enter 35 East Cecil Street to execute his arrest warrant. In reaching this conclusion, the trial court determined that the officers had a reasonable belief that Cooks resided there and that he was present at the time. (Doc. # 19 at 2). In support, the trial court reasoned:

The Court finds that, even if mistaken, Officer Elliott and the SOFAST team had a reasonable belief that the defendant lived at 35 East Cecil Street with his girlfriend. That reasonable belief was based upon the following facts: As part of his investigation, Officer Elliott accessed a Facebook account for one Chontay Lumford. He observed on that account an image of who he believed to be the defendant at Chontay Lumford's residence at 35 East Cecil Street in the City of Springfield, Ohio. Officer Elliott also obtained information from Detective Collins and Detective Bennett of the Springfield Police Department that they had recently observed the defendant at 35 East Cecil Street. Furthermore, Officer Elliott showed a photograph of the defendant to a neighbor who confirmed that the defendant lived at 35 East Cecil Street. Officer Elliott was also aware that the failure to comply, which was the basis for the arrest warrant, had begun with the defendant leaving in a vehicle from 35 East Cecil Street. And finally, * * * Officer Nichols of the Springfield Police Department advised that the defendant was living with his girlfriend, Chontay Lumford, at 35 East Cecil Street in the summer of 2015.

The Court further finds that Officer Elliott had a reasonable belief that the defendant was present when he knocked on the front door to execute the arrest warrant. He received no answer when he knocked but he testified that he could hear some moving around inside the residence. He testified that it sounded like people were "scurrying." He also testified that immediately after he knocked he saw the blinds move.

Accordingly, the Court finds that the initial entry by Officer Elliott and the SOFAST team into 35 East Cecil Street for purposes of executing the arrest warrant upon the defendant was lawful under the Fourth Amendment. * * *.

(*Id.* at 3).

**{¶ 8}** Although the trial court proceeded to make additional findings, the only issue raised by Cooks' assignment of error is whether the trial court erred in finding that police had reason to believe Cooks resided at 35 East Cecil Street and that he was present when they executed his arrest warrant. His entire substantive argument is as follows:

In this case, law enforcement did not have reason to believe that Mr. Cooks resided at the residence, nor that he was present at the time the arrest warrant was executed.

Law enforcement testified that when they knocked on the door at 35 East Cecil they saw the blinds move and heard "scurrying" inside the residence. (Tr. p. 23). Law [e]nforcement was aware that this address belonged to another individual and that that individual had siblings. (Tr. p.

24). Law enforcement admitted that they had no information as to whether that individual or her siblings were in their residence when they knocked on 35 East Cecil. (Tr. p. 24). Law enforcement had no information that anyone had seen Mr. Cooks enter the residence that day. (Tr. p. 24). There was no vehicle at the residence that Mr. Cooks was known to operate. (Tr. p. 25). Law enforcement acknowledged that they did not see nor hear any voices of anyone in the residence prior to their forced entrance. (Tr. p. 27).

(Appellant's brief at 9).

**{¶ 9}** In ruling on a motion to suppress, a trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." (Citation omitted.) *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). As a result, when we review suppression decisions, "we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

**{¶ 10}** Here the record supports the trial court's factual findings, which are based on suppression-hearing testimony and essentially are undisputed. The issue raised on appeal is a legal one, to wit: whether under those facts the officers were entitled to enter the residence at 35 East Cecil Street to execute Cooks' arrest warrant. The law governing resolution of this legal issue also is not in dispute. The Fourth Amendment generally prohibits police from making a warrantless, nonconsensual entry into a suspect's home to make a felony arrest. *Payton v. New York*, 445 U.S. 573, 588-589, 100 S.Ct. 1371, 63

L.Ed.2d 639 (1980).

> * * * The *Payton* Court held, however, that "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.* at 603. Accordingly, pursuant to *Payton*, an arrest warrant is sufficient to enter a person's residence to effectuate the warrant if the police have reason to believe that the suspect lives in the home and is in fact at the home at the time the arrest warrant is executed. "Reasonable belief is established by looking at common sense factors and evaluating the totality of the circumstances." *United States v. Pruitt*, 458 F.3d 477, 482 (6th Circ.2006), citing *United States v. McKinney*, 379 F.2d 259 (6th Circ.1967).[1]

*State v. Zerucha*, 11th Dist. Ashtabula No. 2015-A-0031, 2016-Ohio-1300, ¶ 13; *see also Watenza v. Dayton*, 2d Dist. Montgomery No. 21984, 2008-Ohio-749, ¶ 29 (same).

{¶ 11} In *Watenza*, this court cited the Sixth Circuit's *Pruitt* decision when discussing the reasonable-belief or reason-to-believe standard.[2] In turn, the *Pruitt* court concluded that a reasonable belief is something less than probable cause. *Pruitt* at 482-485. Therefore, police officers do not need probable cause to enter a residence to execute an arrest warrant provided they have a reasonable belief, founded in common sense and

---

[1] Parenthetically, we note that the Sixth Circuit's *McKinney* decision was implicitly overruled on other grounds involving facts not applicable here *in Steagald v. United States*, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981). *Steagald* and *McKinney* involved the need for a search warrant to enter a *third-party's* home to search for a *non-resident* for whom an arrest warrant had been issued. Here, however, the record supports a finding that Cooks was a resident of 35 East Cecil Street.

[2] Case law reveals that some courts, perhaps inaccurately, use the phrases "reasonable belief" and "reason to believe" interchangeably.

based on the totality of the circumstances, that the suspect resides in the home and that he is present at the time. *See also Barrett v. Kentucky*, 470 S.W.3d 337, 343 (Ky S.Ct.2015) ("Although not controlling, we are persuaded by the reasoning of the overwhelming majority of federal circuit and state courts that have held that the 'reason to believe' language is a less exacting standard than probable cause.").

{¶ 12} Here the officers undoubtedly had a reasonable belief that Cooks resided at 35 East Cecil Street. Investigators had seen him at that address through drug surveillance, and they knew Lumford, who resided in the home, was Cooks' girlfriend. In addition, Cooks' failure-to-comply offense had originated at 35 East Cecil Street. Most importantly, however, a neighbor positively identified a photograph of Cooks prior to the officers entering the home and confirmed that Cooks lived at 35 East Cecil Street with his girlfriend. Based on all of this information, the trial court correctly found that the officers had reason to believe Cooks resided at 35 East Cecil Street.

{¶ 13} The only remaining question is whether the officers had a reasonable belief that Cooks was present when they entered the home to execute the arrest warrant. Although the issue may be close, we conclude that they did. Upon approaching the home, knocking on the door, and announcing their presence, the blinds moved and the officers heard "scurrying" inside the house. Based on his experience, Elliott thought this scurrying sound was suspicious. He explained that the scurrying sound is "very common when someone is going to hide. You just hear unusual noises coming from inside the house." (Hearing Tr. at 23). In his opinion, "it didn't sound like somebody was calmly walking away from the front door. It sounded like somebody was hustling away." (*Id.* at 27).

{¶ 14} Based on the officers' reasonable belief that Cooks lived at 35 East Cecil

Street and their knowledge that he had a warrant for his arrest, the scurrying sound Elliott heard in response to the announced police presence supports a common-sense inference that someone wishing to avoid police contact was inside the house. Because Cooks had a warrant for his arrest, the officers reasonably inferred that he was the person they heard scurrying away to avoid contact. *Cf. Barrett* at 343 ("Finally, the fact that the voices and sounds from within the house stopped when Officer Edwards knocked and announced his presence bolstered the belief that someone wishing to avoid police contact was inside. Armed with this reasonable belief, police were constitutionally permitted to proceed inside the house to arrest Barrett when no one answered the door."). Accordingly, the trial court did not err in finding the officers' entry into the home legally permissible.

{¶ 15} Cooks' assignment of error is overruled, and the judgment of the Clark County Common Pleas Court is affirmed.

. . . . . . . . . . . .

FROELICH, J., and WELBAUM, J., concur.

Copies mailed to:

Megan M. Farley
Matthew J. Barbato
Hon. Douglas M. Rastatter