[Cite as *State v. Weaver*, 2018-Ohio-2675.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-A-0038** |
| DEAN B. WEAVER, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2016 CR 00580.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Marie Lane,* Ashtabula County Public Defender, Inc., 4817 State Road, #202, Ashtabula, OH 44004 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Dean B. Weaver, appeals from the judgment of the Ashtabula County Court of Common Pleas, denying his motion to suppress evidence seized from his residence during the execution of an arrest warrant. At issue is whether the deputies possessed probable cause to conduct a warrantless search of appellant's dwelling. For the reasons that follow, we affirm.

{¶2} On August 24, 2016, at approximately 10:45 p.m., Deputies Matthew Johns and Brian Sterrick, of the Ashtabula County Sheriff's Office, arrived at appellant's residence to execute an arrest warrant. The warrant was premised upon appellant's failure to appear on a minor misdemeanor "failure to wear a seat belt" offense. The deputies parked their cruiser away from the residence and approached the home from the rear. Tactically, they testified, such measures are taken when executing an arrest warrant to avoid detection and to preserve officer safety.

{¶3} As they were surveying the property, the deputies noticed a tan-colored Chevy Blazer in the driveway. Deputy Johns knew the vehicle belonged to one Christopher Catron, apparently from previous encounters. Deputy Johns, who is certified as a clandestine methamphetamine laboratory officer, testified he had recently checked Mr. Catron's Sudafed purchases, which revealed he had bought the drug not long ago. Deputy Johns underscored that Sudafed is the primary precursor to methamphetamine manufacture.

{¶4} Deputy Johns also testified that he had received between seven and 10 informal reports, either through colleagues at Sheriff's Office or from concerned citizens, that appellant's residence was being used to manufacture methamphetamine. The reports involved strong chemical odors emanating from the home, heavy, short-duration vehicle and foot traffic, as well as people bringing strange packages into the residence.

{¶5} As the deputies approached the back door, thy peered into a rear window. The window was covered, but they could partially see into the kitchen area. There, they observed a canister of lighter fluid and Mr. Catron, vigorously shaking a plastic beverage bottle. The substance in the bottle was described as "sludgy," "whitish," and

"slurry." The deputies each testified that the lighter fluid, in conjunction with the previous reports and Mr. Catron's recent Sudafed purchase, that Mr. Catron was manufacturing of methamphetamine using the "one-pot" method. Deputy Johns subsequently requested back up because the home potentially contained multiple occupants and there is a heightened physical danger associated with methamphetamine production.

{¶6} Once assistance arrived, the deputies knocked on the door and appellant answered. Appellant immediately closed the door and locked it. The deputies subsequently breached the residence and took appellant and Mr. Catron into custody. After conducting a protective sweep of the home, the officers proceeded to search for the "lab" which, according to Deputy Johns, was in a "highly volatile state" after being shaken. Officers searched the premises and eventually found the bottle in an upstairs bathroom, concealed in the wall.

{¶7} Appellant was indicted on one count of arson, in violation of R.C. 2909.03, a felony of the fourth degree; one count of illegal manufacture of drugs, in violation of R.C. 2925.04(A)(C)(3)(a), a felony of the second degree; one count of aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(1)(c), a felony of the second degree; one count of illegal assembly or possession of chemicals for the manufacture of drugs, in violation of R.C. 2925.041(A), a felony of the third degree; and one count of possessing criminal tools, in violation of R.C. 2923.24(A), a felony of the fifth degree. Appellant pleaded not guilty to the charges.

{¶8} Appellant filed a motion to suppress evidence and, after a hearing, the trial court denied the motion. The court determined the evidence obtained from the

3

warrantless search was admissible because it was found and seized under exigent circumstances. Appellant ultimately withdrew his plea of not guilty and entered a plea of no contest to the aggravated possession of drugs charge. The remaining counts were dismissed. After a sentencing hearing, the trial court ordered appellant to serve a four-year term of imprisonment. This appeal follows.

{¶9} Appellant's sole assignment of error asserts:

{¶10} "The trial court erred when overruling appellant's motion to suppress."

{¶11} Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶8. An "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). Assuming the facts are properly supported, "the appellate court must then independently determine, without deference to the [legal] conclusion[s] of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (3d Dist. 1997).

{¶12} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 8 (1968). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *See, e.g., Katz v. United States*, 389 U.S. 347, 357 (1967).

{¶13} An "arrest warrant is sufficient [authorization] to enter a * * * residence to effectuate the warrant if [a] police [officer] has reason to believe that the suspect lives in the [residence] and is in fact [there] at the time the arrest warrant is executed."

4

(Emphasis added.) *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶10. In other words, "police officers do not need probable cause to enter a residence to execute an arrest warrant provided they have a reasonable belief, founded in common sense and based on the totality of the circumstances, that the suspect resides in the home and that he is present at the time." (Emphasis added.) *Id.* at ¶11.

{¶14} Appellant does not contest the validity of the arrest warrant. Moreover, he does not claim that the residence at issue was not his home. Hence, once the deputies determined appellant was in the home, they possessed the authority to enter the residence to effectuate appellant's arrest. The deputies were properly on the premises and therefore the only matter at issue was whether the circumstances justified the warrantless search of appellant's residence.

{¶15} "Under applicable legal standards, the State has the burden of showing the validity of a warrantless search, because warrantless searches are 'per se unreasonable under the Fourth Amendment - subject only to a few specifically established and well delineated exceptions.'" *State v. Hilton,* 2d Dist. Champaign No. 08-CA-18, 2009-Ohio-5744, ¶21-22, citing *Xenia v. Wallace,* 37 Ohio St.3d 216, 218 (1988). Exigent circumstances are a well-established exception to the Fourth Amendment's warrant requirement. *State v. Andrews,* 177 Ohio App.3d 593, 2008-Ohio-3993, ¶23 (11th Dist.). An exigent circumstance is, inter alia, either an emergency situation which arises when a person in the home is in need of "immediate aid'" or there is a life-threatening situation. *Mincey v. Arizona,* 437 U.S. 385, 392-393 (1978). "The exigent circumstances doctrine requires that, in the absence of a search warrant, probable cause plus exigent circumstances are required to effectuate a warrantless

5

entry of a home. *Kirk v. Louisiana*, 536 U.S. 635, 637 (2002). And this court has held that "if officers have probable cause to believe that a meth lab is being operated on the premises, the risk of explosion constitutes exigent circumstances, authorizing officers under the emergency aid exception to enter the premises without a search warrant in order to protect the public." *State v. Campbell*, 11th Dist. Ashtabula No. 2013-A-0035, 2013-Ohio-5823, ¶36; *see, also, State v. White*, 175 Ohio App.3d 302, 2008-Ohio-657, ¶19 (9th Dist.) ("This court has previously held that the danger that clandestine methamphetamine laboratories pose to occupants, officers, and the community is such that 'the suspected production of methamphetamine constitutes per se exigent circumstances.'" *State v. Sandor,* 9th Dist. Summit No. 23353, 2007-Ohio-1482, ¶10.)

{¶16} In denying appellant's motion to suppress evidence, the trial court observed:

{¶17} Even without the arrest warrant, it is likely, the deputies would have been justified to go to the home of Defendant Weaver for the sole purpose of investigating the reports and multiple complaints of methamphetamine production, strong chemical odors, and high traffic in and out of the home. Regardless, the Deputies were lawfully at the residence when they observed in plain view, with their own eyes, through a window, what they knew from their experience to be methamphetamine manufacturing. The deputies had probable cause based on these observances. Armed with this knowledge, the exigent circumstances exception allowed them to make a warrantless search of the home and seizure of evidence of methamphetamine manufacturing.

{¶18} Appellant contends the trial court erred in denying the motion based upon exigent circumstances. In support, he cites this court's holding in *State v. Link*, 11th Dist. Lake No. 2015-L-078, 2016-Ohio-4597. In *Link*, an unidentified citizen informant contacted police complaining of toxic fumes or chemical smells emanating from Link's apartment. Officers confirmed Link was the renter of the apartment; noted he had

6

purchased pseudoephedrine nine times over the past three and one-half months, including a purchase on that day. Four and one-half hours after the informant placed the call, officers proceeded to the apartment to conduct a "knock and talk" with its occupant(s). Upon arrival, officers did not notice any chemical odor. The officers knocked on the door and heard whispers inside the apartment. After approximately five minutes, an individual male opened the door; another male was also in the apartment. Neither, however, was a tenant. The men confirmed Link had left the residence earlier. The officers believed there was a strong possibility that methamphetamine was being or had been manufactured inside the apartment and, as a result, conducted a protective sweep. They found no obvious evidence of methamphetamine manufacturing. After questioning the two men found in the apartment, one admitted he purchased pseudoephedrine from appellant for the purpose of providing the drug to another individual for the manufacture of methamphetamine. The trial court denied Link's motion to suppress evidence, finding exigent circumstances justified the search of Link's apartment. Link subsequently pleaded no contest to illegal assembly or possession of chemicals for the manufacture of drugs.

{¶19} On appeal, this court determined there were no exigent circumstances as there was no "immediate need" or emergency at hand. *Id.* at ¶30. This court underscored the officers waited four and one-half hours to investigate the complaint, during which time they had the opportunity to obtain a warrant. *Id.* Moreover, upon arrival, there was no indication that methamphetamine production was or had recently occurred, i.e., there was no chemical or toxic odor, they did not observe any criminal activity, and there was nothing in plain view that would indicate the presence of a

7

methamphetamine lab. *Id.* at ¶31. This court therefore concluded the search of the home was motivated for the purpose of seizing evidence of criminal activity and not due to exigent circumstances. *Id.* at ¶32. The instant case is distinguishable from *Link*.

{¶20} Here, although the deputies were aware of multiple complaints of noxious chemical odors coming from the home and frequent foot-traffic in and out of the residence, they were on the premises for the stated purpose of executing a valid arrest warrant. Even though they could have executed the warrant earlier in the day, testimony established that the deputies prefer to execute arrest warrants at night for officer safety and to avoid detection by the potential arrestee. Upon arrival, they peered into a window and observed, in plain view, lighter fluid (a chemical used in the production of methamphetamine) and Mr. Catron shaking a bottle with a sludgy substance. Both deputies testified such actions, in relation to the surrounding circumstances, supported the reasonable inference that Mr. Catron was engaged in the process of manufacturing methamphetamine via the "one-pot" method. And Deputy Johns, a certified clandestine methamphetamine lab officer, testified to the heightened danger involved in such a process, especially in light of the vigorous nature with which Mr. Catron was reportedly shaking the substance.

{¶21} The deputies had sufficient facts and circumstances to justify the belief that methamphetamine production was occurring contemporaneous with their arrival at the house. They therefore had probable cause to believe there was an existing one-pot lab on the premises upon entry into the home. These facts, pursuant to *Campbell*, *supra*, inter alia, support the trial court's finding that exigent circumstances justified the

8

officer's warrantless search of appellant's home.  Accordingly, the trial court did not err in denying appellant's motion to suppress.

{¶22}  Appellant's sole assignment of error lacks merit.

{¶23}  For the reasons discussed in this opinion, the judgment of the Ashtabula County Court of Common Pleas is affirmed.


THOMAS R. WRIGHT, P.J., concurs,

COLLEEN MARY O'TOOLE, J., dissents.