[Cite as *State v. Hughes*, 2018-Ohio-5069.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-A-0035** |
| ALBERT THOMAS HUGHES, JR., | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00252.

Judgment: Affirmed.

*Nicholas A. Iarocci,* Ashtabula County Prosecutor, and *Shelley M. Pratt,* Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Phillip L. Heasley,* Ashtabula County Public Defender, Inc., 4817 State Road, Suite 202, Ashtabula, OH 44004 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellant, Albert Hughes, appeals from a March 28, 2018, judgment of the Ashtabula County Court of Common Pleas denying his motion to suppress. At issue is whether law enforcement's search of his motel room and seizure of evidence was lawful when they entered his room mistaking him for the subject of an arrest warrant and observed drug paraphernalia in plain view. We affirm the trial court's decision denying the motion to suppress.

{¶2} On November 28, 2016, the Ashtabula County Sheriff's Department received a tip on the whereabouts of Tyrone Brown, who was wanted by U.S. Marshals on a federal arrest warrant. The tip stated Mr. Brown was occupying a room at the Cedars Motel with another individual, Appellant Hughes; the two drove a maroon Chevrolet Impala; and there was heroin in a pill bottle in the motel room. Detective Cleveland confirmed that there was an active federal arrest warrant for Mr. Brown but did not obtain or present a copy of the warrant on the day in question.

{¶3} Shortly thereafter, Det. Cleveland, detectives from the Trumbull Ashtabula Group ("TAG") task force, and officers from the Ashtabula City Police Department went to the Cedars Motel. Det. Cleveland spoke with the owner, Orville Weatherholt, and showed Mr. Brown's photograph. According to Det. Cleveland, Mr. Weatherholt stated Mr. Brown did frequent room 127, Albert Hughes also lived in that room, and the two drove a maroon Chevrolet sedan. According to Mr. Weatherholt, he told the detectives he knew Mr. Brown to frequent the motel but he did not reside there and declined to give them a key at that point.

{¶4} The detectives set up surveillance on room 127 and approximately half an hour later a maroon Chevrolet sedan pulled up. The driver matching Tyrone Brown's description got out of the car and went into room 127. Det. Cleveland returned to Mr. Weatherholt, said they intended to arrest Mr. Brown and that their plan was to knock on the door, but in case he would not answer, they asked for the room key. Mr. Weatherholt asked if they had a warrant and upon Det. Cleveland's affirmative response, but with no warrant presented, Mr. Weatherholt turned over the key. Telling slightly different rendition of the conversation, Mr. Weatherholt testified the detective

2

said he saw two individuals in the room, one being Mr. Brown, that the room was actually 134, he then felt that when they asked he had to give them the key.

{¶5} Det. Cleveland knocked on the door of room 127 and identified himself. Hearing no immediate response, he used the key to unlock and open the door. He saw a man whom he believed to be Mr. Brown and said, "Tyrone Brown, we have a warrant for your arrest." The man immediately replied he was Albert Hughes. Det. Cleveland testified they compared Mr. Hughes to the photograph of Mr. Brown and they looked substantially similar. Mr. Hughes provided officers with his car keys so they could obtain his identification, which showed him to be Albert Hughes. However, Det. Cleveland testified it is not uncommon for a fugitive to have false identification and that he still questioned his identity until after his arrest when his fingerprints confirmed he was Albert Hughes.

{¶6} The detectives observed a pill bottle, a scale, baggies, and other drug paraphernalia in plain view. Det. Cleveland asked and received Mr. Hughes verbal permission to search his car and the pill bottle. Nothing was found in the car, but the pill bottle contained a substance believed to be heroin. At this point, Det. Cleveland advised Mr. Hughes of his Miranda rights. He testified Mr. Hughes acknowledged and voluntarily waived these rights and gave the detectives permission to search the room. A safe was found. Mr. Hughes said the pill bottle and the safe contents were his, but the scale, packaging supplies, and other drug paraphernalia belonged to Mr. Brown. When Mr. Hughes was hesitant to give permission to search the safe, Det. Cleveland asked if it contained a gun. Mr. Hughes denied the existence of a gun but said it contained a "little bit of marijuana." He then gave permission for the detectives to open

the safe with the key located on his car keychain. Marijuana and a substance believed to be cocaine were found in the safe. The detectives informed Mr. Hughes he would go to jail for the drugs they had found. Then, they asked if he would sign a written confirmation of the search consent he gave earlier. Mr. Hughes signed, and the consent entered into evidence shows his consent to search Cedar's Motel room 127, vehicle, and safe.

{¶7} Mr. Hughes was indicted on one count of possession of cocaine, a fifth-degree felony under R.C. 2925.11(A)(C)(4)(a); and one count of possession of marijuana, a minor misdemeanor under R.C. 2925.11(A)(C)(3)(a). He was arraigned on these charges and entered a plea of not guilty to each count. Mr. Hughes, through counsel, filed a motion to suppress the evidence, asserting the arresting officers lacked probable cause in which to make a warrantless and nonconsensual entry into the motel room in which Mr. Hughes was arrested and the evidence was seized. The Ashtabula County Court of Common Pleas held a hearing on the suppression motion and overruled it. According to a plea agreement, Mr. Hughes ultimately pled no contest to the possession of cocaine charge and the possession of marijuana charge was dismissed. He was sentenced to two years' community control, with credit for two days jail time; $150.00 per year supervision fees; and court costs.

{¶8} Mr. Hughes, through counsel, now appeals the overruling of his suppression motion. He asserts one assignment of error for our review:

{¶9} The trial court erred in overruling defendant's suppression motion.

{¶10} "'Appellate review of a motion to suppress presents a mixed question of law and fact.' *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶8. At a

4

hearing on a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *Id.; State v. Mills*, 62 Ohio St.3d 357, 366 (1992). A reviewing appellate court must accept the facts determined by the trial court as true and "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside, supra,* citing *State v. McNamara*, 124 Ohio App.3d 706, (1997). Therefore, we review the Ashtabula County Court of Common Pleas' decision for clear error as to factual findings and de novo as to conclusions of law. *See United States v. Mohammed*, 512 Fed.Appx. 583, 586–87 (6th Cir.2013), citing *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir.2004).

{¶11} Mr. Hughes asserts *Steagald v. United States,* 451 U.S. 204 (1981) and *State v. Wilson,* 2 Ohio App.3d 151 (6th Dist.1981) as authority supporting his proposition that the arrest warrant was insufficient grounds to enter the motel room. In both *Steagald* and *Wilson*, however, the officers knew they were entering the residence of a third-party; here, law enforcement believed Mr. Brown resided at the motel room they entered and believed Mr. Brown was in the hotel room when they entered.

{¶12} The heart of Mr. Hughes' argument is his Fourth amendment rights were violated when law enforcement entered his motel room without a search warrant. "The Fourth Amendment generally prohibits police from making a warrantless, nonconsensual entry into a suspect's home to make a felony arrest." *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶10, citing *Payton v. New York*, 445 U.S. 573, 588-589 (1980). These protections also apply to hotel and motel rooms. *Hoffa v.*

*United States*, 385 U.S. 293, 301 (1966), citing *United States v. Jeffers*, 342 U.S. 48 (1951).

{¶13} However, a distinction is drawn between law enforcement entrance into the subject of the arrest warrant's residence versus entrance into a third-party's residence in which the subject of the arrest warrant is suspected to be but the subject does not reside. In *Payton*, the Supreme Court held "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling *in which the suspect lives* when there is reason to believe the suspect is within." *Id.* at 603. (Emphasis added.)

{¶14} Subsequently, the Supreme Court held, absent consent or exigent circumstances, an arrest warrant is insufficient to justify entrance into a third-party's residence to search for the subject of an arrest warrant. *Steagald, supra,* at 212. The Supreme Court of Ohio has also addressed this issue, stating, "a search warrant must be obtained in order to seek out the subject of an arrest warrant on the property of a third party." *State v. Pembaur*, 9 Ohio St.3d 136, 138 (1984), citing *Steagald, supra*.

{¶15} However, where law enforcement has reason to believe the subject of the arrest warrant lives in the residence and is in fact there at the time the warrant is executed, the arrest warrant is sufficient authorization to enter. *State v. Weaver,* 11th Dist. Ashtabula No. 2017-A-0038, 2018-Ohio-2675, ¶13, citing *Cooks, supra,* at ¶10; *see also United States v. Hardin*, 539 F.3d 404, 410 (6th Cir.2008), quoting *United States v. Jones*, 641 F.2d 425, 428 (6th Cir.1981); *State v. Chavez*, 2d Dist. Montgomery No. 27840, 2018-Ohio-4351 (search warrant was only needed if "officers had a reasonable belief that Cardenas was merely a guest of the room's tenants.");

6

*State v. Mansaray*, 8th Dist. Cuyahoga No. 93562, 2010-Ohio-5119; *United States v. Junkman*, N.D. Iowa No. CR96-4033, 1997 WL 33559171, *4 (June 24, 1997); *United States v. Ray*, 21 F.3d 1118 (9th Cir.1994). Reasonable belief must be "'founded in common sense and based on the totality of the circumstances, that the suspect resides in the home and that he is present at the time.'" *Cooks*, *supra*, at ¶11.

{¶16} The trial court's judgment indicates it determined Mr. Brown to in fact be a resident of the motel room. Reviewing the trial court's finding of this fact for clear error, we find none. The evidence clearly supports a finding the detectives had a reasonable belief that Mr. Brown resided at Cedar Motel room 127. First, the tip said Mr. Brown occupied a room at Cedar Motel. This was supported by Mr. Weatherholt who told detectives Mr. Brown frequented that room. Moreover, both the tip and Mr. Weatherholt stated Mr. Brown and Mr. Hughes shared a maroon Chevrolet sedan, which law enforcement observed outside room 127. Even once officers entered the room, Mr. Hughes said Mr. Brown was staying with him. Thus, the trial court validly found law enforcement had a reasonable belief Mr. Brown resided at the motel room they searched.

{¶17} In addition, law enforcement must also reasonably believe the subject of the arrest warrant is present at the residence when the warrant is executed. *Weaver, supra,* at ¶13. The trial court's judgment shows that it determined law enforcement's belief that Mr. Hughes was actually Mr. Brown was reasonable. We find no error in this determination. Det. Cleveland testified Mr. Hughes matched the description of Mr. Brown they had at the time. They compared Mr. Hughes to Mr. Brown's photograph and determined they looked substantially similar. Moreover, Det. Cleveland testified

7

frequently fugitives will carry false identification, so even once Mr. Hughes produced identification, he didn't assume it was accurate. Thus, the trial court validly found "[t]he law enforcement authorities had sufficient reason to believe that Tyrone Brown was present in the motel room at the Cedar's Motel, and on the basis of the federal arrest warrant, were authorized to enter that room to effectuate his arrest."

{¶18} Because it was reasonable for law enforcement to believe that Mr. Brown resided in Cedar Motel room 127 and believed Mr. Brown was present in the room, they were lawfully inside the motel room. Once there, they observed drug paraphernalia in plain view and obtained Mr. Hughes' consent to search the room.

{¶19} Mr. Hughes argues that his consent to search was not valid, but he "merely acquiesced to a show of authority on the part of law enforcement" because of the "overwhelming presence of multiple law enforcement personnel in the motel room, which overcame any consent to search on appellant's part, and transformed it into mere acquiescence to authority."

{¶20} "'[T]he Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force. For, no matter how subtly the coercion was applied, the resulting 'consent' would be no more than a pretext for the unjustified police intrusion against which the Fourth Amendment is directed.'" *State v. Ingram*, 82 Ohio App.3d 341, 346 (2nd Dist.1992), quoting *Sckneckloth v. Bustamonte*, 412 U.S. 218, 228 (1973). *See also State v. Smotherman*, 6th Dist. Wood No. 93WD082, 1994 WL 395128, *1 (July 29, 1994).

{¶21} However, nothing in the record shows law enforcement coerced Mr. Hughes' consent. First, no testimony to the effect of coercion or acquiescence was

8

presented. Furthermore, Det. Cleveland testified that Mr. Hughes had the right to refuse consent:

> **{¶22}** Richard Danolfo: * * * [W]ould he [Mr. Hughes] have had the right if he wanted to search the room to say no? Or to not speak with you at that that point in time?
>
> **{¶23}** Det. Cleveland: Absolutely.
>
> **{¶24}** Richard Danolfo: Okay. Even being in handcuffs?
>
> **{¶25}** Det. Cleveland: People tell me they don't want to speak with me and they don't want me to search their homes or houses all the time.

**{¶26}** Finally, the consent form that Mr. Hughes' signed specifically states: "I understand that I have the right to refuse to consent to the search described above and to refuse to sign this form. I further state that no promises, threats, force, or physical or mental coercion of any kind whatsoever have been used against me to get me to consent to the search described above or to sign this form." Therefore, we find the totality of the circumstances shows Mr. Hughes' consent was not coerced but validly obtained.

**{¶27}** Mr. Hughes also argues that no exigent circumstances of any kind exist in this case. Either exigent circumstances or consent is required for searches of a residence without a search warrant. *See Steagald, supra,* at 212. As we find valid consent was obtained, this argument is moot.

**{¶28}** Mr. Hughes' assignment of error is without merit. Accordingly, we affirm the judgment of the Ashtabula County Court of Common Pleas.


THOMAS R. WRIGHT, P.J., concurs in judgment only,

COLLEEN MARY O'TOOLE, J., dissents.

9